MARY A. MCGEE and FRANK C. O'BRIEN, Plaintiffs, *v.* WILLIAM FRIEDMAN, Defendant.

Supreme Court, Schenectady County, January 2, 1931.

*Mann & Mann*, for the plaintiffs.

*John E. Kelly*, for the defendant.

ROGERS, J. Two defenses are made to the enforcement of the agreement: *First.* That according to its terms the defendant was not to assume the payment of the mortgage unless he sold the property within the year period during which the payment was extended. *Second.* That the agreement is void for usury.

I think the first contention is untenable, and the second good. The agreement is as follows:

"*June* 12, 1929

" Mr. WILLIAM FRIEDMAN,

"35 DeCamp Avenue,

"Schenectady, N. Y.

"DEAR SIR: According to our agreement relative to the second mortgage held in this office covering Nos. 15–17 Congress Street, Schenectady, we hereby agree with you to extend this mortgage on

July 1, 1929, on which date the mortgage is payable, to July 1, 1930, and in consideration of this extension, it is your agreement that you assume the payment of the said bond and mortgage and will also pay for such extension the sum of $351.50 which payment is to be made only in case the property is sold by you during the time of the extension of the mortgage above mentioned, that is, if sold during the year from July 1, 1929 to July 1, 1930, and if not sold by you and you retain ownership of the property, your agreement to pay is not binding, and you do not pay anything for such extension.

> " Yours very truly,
> " MARY A. McGEE
> " By
> " LORENA A. McGEE
> " FRANK C. O'BRIEN
> " WILLIAM FRIEDMAN "

In consideration of the plaintiffs' promise to extend the date of payment, the defendant made two promises, *first*, that he would assume the payment of the bond and mortgage, and *second*, that he would also pay $351.50 in case he sold the property during the extension period. After thus agreeing, the writing could well have ended without adding, " that is," *et seq.*, which were intended to be explanatory, rather than qualifying words. The last few lines relate only to the payment of the $351.50, and not to defendant's promise to assume the mortgage debt. Otherwise the advantage arising to plaintiffs in having defendant's personal responsibility, as added security for the debt, would not exist. In the explanatory clause the parties in using the word " pay " intended to differentiate between the payment of the $351.50 and the assumption of the payment of the bond and mortgage. It will be noted that the language first used is: " You *assume* the *payment* of the said bond and mortgage and will also *pay* for such extension the sum of $351.50 which *payment* is to be made only in case," etc. The parties did not intend by the use of the words " not pay anything " in the last clause to relieve the defendant from that part of the agreement wherein he assumed the payment of the bond and mortgage.

The extension made upon terms whereby the defendant not only assumed the mortgage debt but in addition gave plaintiffs a contingent right, not dependent upon the option or will of the defendant, to receive an additional sum makes the extension agreement usurious.

" A contract to extend the time of payment of a mortgage debt made between the holder of the mortgage and one who has pur-

chased the premises subject to it, but without assuming it, is usurious, where as a condition of granting such extension the holder of the mortgage requires the owner to assume the mortgage debt and to pay a sum above the legal interest for such extension or forbearance." (*Ganz* v. *Lancaster*, 169 N. Y. 357, at p. 363.)

But the plaintiffs assert that it was optional with the defendant to sell or not, and, therefore, this case comes within the rule enunciated in *Sumner* v. *People* (29 N. Y. 337): "If the payment is conditional, and that condition is within the power of the debtor to perform, so that the creditor may by the debtor's act be deprived of any extra payment, it would not be usurious." And as stated in *Palmroy* v. *Ainsworth* (22 Barb. 118, 124): "If the gain to the lender beyond the legal rate of interest is made dependent on the will of the borrower, as where he may discharge himself from it by the punctual payment of the principal, the contract is not usurious."

It was not, however, within the defendant's option or will or power to obviate and discharge his agreement to pay the $351.50, either by paying the principal and interest of the mortgage, or by declining to sell the property. Expiration of the year period without selling the property was required to obviate the obligation. If defendant paid the bond and mortgage a week after the agreement was made the plaintiffs would still be entitled to collect the $351.50, if at any time during the year defendant sold the property. True he could not be compelled to sell, and without definite assurance that he would sell within the year, plaintiffs' contingent right to receive the $351.50 was not worth that amount, but it was a substantial right worth something. The plaintiffs believed it was of value, otherwise they would not have had it inserted in the agreement. The extent of its value is not important provided it was of substantial worth and gave to the plaintiffs something of substance over and above the legal rate of interest permitted by the statute.

The lenders did not get the bonus because the contingency upon which it was payable did not occur. They, however, procured the right to the bonus if the contingency occurred. This was of value until it appeared definitely that the defendant would not sell. Suppose the property were so located that at the time of the agreement it was temporarily in great demand for a special purpose and had enhanced value because of such special demand, and if not sold shortly its value would greatly diminish. Under such circumstances an agreement to pay a certain sum in the event of sale within a year would be worth practically the amount mentioned in the agreement to be paid. It does not appear what the

conditions were, what special likelihood there was of sale, but even if the chance of payment under the agreement was quite nebulous it was more than the plaintiffs had the right to demand, and they must suffer the penalty imposed by the statute (Gen. Business Law, § 373) of having the instrument declared void.

In *Brown* v. *Vredenburgh* (43 N. Y. 195) it is held: "When a lender stipulates for a *contingent benefit* beyond the legal rate of interest, and has the right to demand the repayment of the principal sum with the legal rate of interest thereon, * * * the contract is in violation of the statute prohibiting usury, and void."

The case *Diehl* v. *Becker* (227 N. Y. 318) is quite analogous. In that case the borrower agreed in addition to repaying the moneys loaned with the legal interest that if he made a lease or sale of certain patent rights owned by him he would pay the lender an additional sum. The borrower had the option to sell or lease the patent rights, or not as he desired. The court said: "Payment of principal and interest did not end all obligations under the contract. If ever thereafter the borrower sold his patents, the bonus became due. It is true he might not sell them. But in any event the plaintiff was entitled to his principal and interest and in addition thereto he acquired this contingent right. It was a valuable right. He acquired it under the original contract as part compensation for the loan. No act of the borrower might deprive him of it. The plaintiff was to receive for the loan of his money a greater value than six per centum. This was usury within the definition of the statute."

The only difference between the above quotation and our case is, "If *ever thereafter* the borrower sold his patents, the bonus became due," whereas in our case, if *during one year* the defendant sold the mortgaged property, the bonus became due. The time in which the contingent right may accrue should make no difference in the principle involved. The *Diehl* case was cited and app ied in *Webster* v. *Roe* (212 App. Div. 756), a decision of the Third Department, wherein it was unsuccessfully contended by plaintiff, who had promised certain definite profits in addition to principal and interest for a loan, that the payment of the excess might have been averted by the borrowers abandoning the venture. (See, also, *Hungerford Brass & Copper Co.* v. *Brigham*, 47 Misc. 240.)

The complaint must be dismissed, with costs.

Submit decision.