R.J. MCMAHON, Commissioner Office of the Commissioner ofSavings and Loan
You have requested my opinion on whether seller's points constitute interest for purposes of sec. 138.05, Stats. You have described a plan proposed by at least one Wisconsin savings and loan association *Page 399 
to charge seller's points, a one-time charge to the seller of the property being purchased by a customer of the association. The charge would be calculated as a percentage of the amount borrowed and would be charged in addition to the contract interest rate and other charges that the association collects from the borrower. You have expressed concern that such seller's points may constitute interest for purposes of sec. 138.05, Stats.
Section 138.05 (1), Stats., provides in part as follows:
 Except as authorized by other statutes, no person shall, directly or indirectly, contract for, take or receive in money, goods or things in action, or in any other way, any greater sum or any greater value, for the loan or forbearance of money, goods or things in action, than:
 (a) At the rate of $12 upon $100 for one year computed upon the declining principal balance of the loan or forbearance. . . .
In a previous opinion to you I observed that the broad statutory language of sec. 138.05, Stats., indicates the Legislature's intention to limit all devices for exacting compensation for a loan regardless of the form of the transaction. 65 Op. Att'y Gen. 67, 69 (1976). That opinion discusses the types of charges which must be included in the computation of interest rates under sec. 138.05. Stats., but deals only with those charges paid by the borrower directly. Your present inquiry relates to the treatment of charges paid by the seller to the lender as a condition of the granting of a loan to the buyer. Since certain types of charges described in the prior opinion would not be includable as interest even if charged directly to the buyer, such charges would, of course, not be includable if charged to the seller in the transaction. The question then is whether charges which would be part of the interest rate if paid by the buyer are includable within the interest rate computations if paid by the seller.
McArthur v. Schenck, 31 Wis. 673 (1873), dealt with a fact situation in which the seller of a farm reduced the purchase price by $30 to reimburse the buyer for a $30 usurious charge imposed by the lender. The court attached substantial significance to the fact that the $30 charge was not actually paid by the buyer. but was, in fact, paid by the seller, a stranger to the loan. The court stated at p. 676 as follows: *Page 400 
 The theory upon which laws against usury have been enacted, and the principle which has governed in their interpretation, have always been, that the borrower was at the mercy of the lender and subject to his utmost exactions and avaricious demands, unless protected by laws. In theory the borrower has been put, by such laws, in the same category with persons under legal disability to contract, such as infants, femes coverts, and persons non compos mentis. He has been declared legally incompetent to make a bargain about money where more than the lawful rate of interest was demanded. The prohibition of all such laws, and of our law, has been and is against the lender's bargaining for, reserving or taking usury from the borrower. We say "from the borrower," not because the statute uses these exact words or in terms so enacts the prohibition, but because such is the evident intent and purpose of the statute. Acts of the kind have always been so interpreted and understood. It is to shield from the grasp of the lender, and save the borrower from the injurious consequences of his own weakness and inability, that such statutes have been passed. They are designed for the protection of the borrower, and the protection so given has been extended to those persons standing in his place or representing him and succeeding to his rights, such as heirs-at-law, executors, devisees, sureties, assignees and the like. They are designed for the borrower's protection and benefit, and the protection and benefit of those thus representing him, when he or they has or have suffered loss or injury from the unlawful exactions of the lender or may suffer such loss or injury from the performance of the usurious contract, and when likewise he or they see fit not to waive the sanction or penalty of the statute in his favor. . . .
 A recurrence to these general principles, which are well understood and elementary, seems very clearly to indicate that the payment of usury, if it be properly so called, not by the borrower, but by a stranger to the contract, one not connected with the loan nor liable for it, who voluntarily or from any motive advances the sum exacted or sustains the loss where the borrower is unwilling or declines so to do, is not a circumstance of which the borrower can be permitted to take advantage for the purpose of having the contract declared inoperative and void for usury. *Page 401 
(Emphasis in the original.)
Zang v. Schumann, 262 Wis. 570, 55 N.W.2d 864 (1952), cited McArthur with approval and stated:
 In the Wisconsin Annotations (1933), p. 353, to Restatement, 2 Contracts, sec. 531, prepared under the direction of the late Prof. William H. Page, appears the following statement:
 "The Wisconsin cases are in accord with the Restatement in holding that a payment made by a third party in order to induce the making of the contract, although together with interest it exceeds the permitted rate, does not make the bargain usurious: McArthur v. Schenck, 31 Wis. 673, 11 Am. Rep. 643 (1873). From this case, however, it would seem that it is immaterial whether or not the borrower knows of or consents to the payment."
Zang, 262 Wis. at 577.
The Wisconsin cases are clear that a payment by a seller made to a lender to induce the loan of money to a buyer is not included within the calculations to determine whether the loan is usurious so long as the payment falls on the seller. The situation would, however, be different if the seller were to pass such burden on to the buyer by directly or indirectly inflating the selling price.
Just as the court in McArthur looked beyond the form of the transaction to determine that the actual payment for the usurious charge was made by the seller, so must one look beyond the form of the transactions proposed by Wisconsin savings and loan associations to determine whether the points "paid" by the seller are, in fact, a burden on the buyer. Numerous Wisconsin cases clearly state that in cases of alleged usury, the court will look through the form of the agreement to the substance of the transaction. State v. J. C. Penney Co., 48 Wis.2d 125,179 N.W.2d 641 (1970); Randall v. Home Loan and Investment Co.,244 Wis. 623, 12 N.W.2d 915 (1944); Friedman v. Wisconsin AcceptanceCorp., 192 Wis. 58, 210 N.W. 831 (1927).
The Federal Reserve Board, responsible for interpretations of the federal Truth-In-Lending Act, 15 U.S.C. secs. 1601 et seq., has considered the appropriate treatment for disclosure purposes of seller's *Page 402 
points in situations such as posed by your inquiry. Although disclosure requirements imposed by the federal government are not controlling as to the proper treatment of charges under state usury laws, they do provide some insight into the likelihood that such charges will ultimately be borne by the buyer. The Federal Reserve Board stated:
 (b) Under the general rule in sec. 226.4 (a), any such discount, to the extent it is passed on to the buyer through an increase in the selling price, must be included in the finance charge. However, as a practical matter, it may be difficult to determine whether or not a discount paid by the seller in connection with a real estate transaction has been, in fact, passed along to the customer as a part of the purchase price of the property. . . .
 (c) The Board has concluded that in any such transaction coming within its administrative enforcement authority, where seller's points or discounts were, in fact, passed along to the customer or buyer and the amount thereof was not disclosed as a finance charge, the Board will take such action as may be appropriate in the circumstances. However, it will not attempt to prescribe rules creating a presumption that all discounts or points are passed on to the customer or buyer and hence must be included in the finance charge in any particular class of transaction. On the other hand, the inclusion of seller's points or discounts in the finance charge will be acceptable to the Board as a correct disclosure under Regulation Z.
Board Interpretation, October 23, 1970, found in 1 CONS. CRED. GUIDE (CCH) para. 3518 at pp. 3625 to 3625-3.
If in a particular case the seller's points have been passed on to the buyer in the form of a higher price than would otherwise have been agreed to in the transaction, they fall clearly within the scope of sec. 138.05 (1), Stats., which prohibits the lender from directly or indirectly, contracting for, taking or receiving more than twelve percent (12%) for a loan or forbearance. In those cases where the points have been borne by the seller and not passed on to the buyer in any way, the Wisconsin case law would lead to the conclusion that such charges would not be a part of the interest under sec. 138.05, Stats.
BCL:DJH:RAV *Page 403